Annie Mae DUNN, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of
Health, Education, and Welfare,
Defendant.

Civ. A. No. 18552-3.

United States District Court,
W. D. Missouri, W. D.

March 22, 1971.

Albert Copaken, and Sylvia Copaken, Copaken & Copaken, Kansas City, Mo., for plaintiff.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

ORDER REMANDING ACTION TO DEFENDANT FOR THE TAKING OF ADDITIONAL EVIDENCE AND DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT

WILLIAM H. BECKER, Chief Judge.

This is an action under Section 405(g), Title 42, United States Code, for review of a disability determination made by defendant on May 28, 1970, denying plaintiff's claim. Plaintiff's petition for review was filed in this Court on July 23, 1970.

Plaintiff originally filed her claim for disability benefits on March 25, 1969.

The claim was denied by the Social Security Administration on initial consideration and again on reconsideration. On December 15, 1969, at plaintiff's request, a hearing was held, and the hearing examiner, on December 19, 1969, entered his decision against the plaintiff. On May 28, 1970, the Appeals Council of the Social Security Administration affirmed the hearing examiner's decision. Thus, the decision of the hearing examiner stands as the final decision of the Secretary. This final decision is reviewable in this Court under the provisions of Section 405(g), *supra*.

The standards of disability applicable in these proceedings are those set out in Sections 416(i) (1) and 423(d) (1) of Title 42, United States Code, which read as follows:

"The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *."

It is plaintiff's contention that she meets this standard because she contends that she became unable to work in October 1968, at age 38, because of poor vision and head and back injuries. Defendant concedes that plaintiff meets the earnings requirement for disability purposes until June 30, 1973.

THE EVIDENCE OF RECORD

A review of the relatively brief record which was considered by the hearing examiner in denying disability benefits shows the following:

(1) A "Medical Report" of J. Kenneth Coles, D.O., dated March 28, 1969, and received by the Social Security Administration on April 15, 1969. This report merely contains the following notation:

"12–24–68 Trauma from accident. Reffered (sic) to Dr. Lemoine—KU Med. Center. J. Kenneth Coles, D.O."

(2) A "Medical Report" of Clarence S. Coffey, D.O., dated March 28, 1969, and received by the Social Security Administration on April 15, 1969. The report reads as follows:

"Our records indicate we have attended this patient for a number of ailments of no particular signifience (sic) dating back to about 1965.

"During the past year the patient has developed complaints and manafestations (sic) of impairments that may be considered disability, in which we are unable to classify or type.

"It is the opinion, that our report of findings would not be fair to the patient as a qualified evaulation (sic) of her disability. It is our strong belief that she should have a medical study first under qualified neurological methods to determine whatever there may be reason to consider disability.

"The body reflexes and vision are matters we suspect of being of potential serious concern."

(3) Social Security Administration Report of Disability Interview with claimant on March 25, 1969, reading as follows:

"On 10/14/68, wage earner slipped on floor while at work and fell backwards and injured head, neck and back. After a few minutes the wage earner was able to get up and go to the plant 'hospital' located on the employer's premises. The nurse gave the w/e some pain pills and told her to come back the next day. X rays of back and neck and head were taken the next day, and it was found she had a smashed disc on left side of neck and 2 discs out of place in back. The company doctor recommended therapy treatments which she took daily for 3 months. W/e wore a neck brace for about 2 months. Since the accident the w/e has had severe headaches and poor vision. She has been unable to work since 10/14/68. She is presently taking pain pills as needed.

\* \* \* \* \* \*

"W/e's eyesight has become worse.

\* \* \* \* \* \*

"W/e can see large objects. All other objects seem blurred. No restrictions at this time. She is unable to do anything that requires good vision. Unable to read.

\* \* \* \* \* \*

[Daily activities] "W/e takes care of personal needs. She lives alone in a 4 room house. Members of her family spend a part of each day with her. W/e does light housework and her own cooking. She has no income at this time."

\* \* \* \* \* \*

"Unable to drive because of sight.

\* \* \* \* \* \*

"W/e signed name but had to bend head close to paper.

"W/e was attractive young appearing woman—neatly dressed—very cooperative."

(4) Radiology Consultation report dated December 26, 1967, by Mayorga E. Palacios, M.D. This report recites that plaintiff had suffered "neck and back pain" and "weakening of right arm" from a "car wreck." According to the report, plaintiff suffered "what appears to be a fracture" in the "left lateral arch of the seventh rib on the left." With regard to the skull, the report reads as follows:

"Multiple projections reveal the heavy calcification in the falx cerebri-Sella turcica is somewhat deep. No gross evidence of destruction. There is a curvalinear density overlying the anterior parietal area, which appears to be outside the skull. This may represent an artifact. If clinically indicated, this should be repeated for better evaluation. There is no gross evidence of fractures."

The report further found "as an incidental finding, there is (sic) congenital bony defects in the wings in the sacrum."

(5) Letter of Bernard Mark Abrams, M.D., dated May 22, 1969, to the OASI

Disability Determinations Counselor, Elmer O. Holtan, which reads as follows:

"I saw this 38 year old, right handed, Negro lady at your request on 21 May 1969. She worked on a processing line at the Hercules Sunflower Ordinance (sic) Plant in Kansas until October 1968 when she fell, striking the occiput, mid-thoracic region and lumbar region of her back. She now alleges complaints of 'poor vision with blurriness,' sever (sic) occipital headaches, and thoracic pain. The patient claims her past health was good and that she worked with a good work record at Sunflower Ordinance (sic) for the past 3 years.

"The examination of Mrs. Dunn reveals a well developed, well nourished lady appearing about her stated age. Her mental status is remarkable only for the patient's indifference to her present complaints and concern with a variety of things like insurance forms to pay for her house while she is not working. She like several other Sunflower employees that I have encountered knows inside and out the rules related to employment disability insurance, etc. The patient's cranial nerves are distinguished by the fact that the patient claims that she cannot see anything including a single finger held up within two feet of her when she can see the examiner's face clearly. She refuses to cooperate with visual field testing. The optic fundi are normal with some areas of old coreo-retinitis around the discs on the temporal margins bilaterally. The remainder of the cranial nerves are normal. Motor power is weak because of lack of cooperation, the patient making only a very minor effort to squeeze the examiner's fingers or resist muscle movement. The deep tendon reflexes are equal and active. Sensation is intact, for all modalities. The examination of the cervical, lumbar and thoracic spines reveals no abnormality and there are no signs of sciatic nerve irritation.

"Summary and conclusions: This patient's complaints of poor vision and low back pain as well as headache appear to be on a hysterical basis to me. During the past several months I have become familiar with what might be only half factitiously called 'the Sunflower Ordinance (sic) syndrome.' I have seen a number of employees of this plant, all of whom are litigious in the extreme, who seem to know the ins and outs of the disability insurance, etc., available at their plant. They all seem to be well equipped with a large variety of insurance forms to cover various exigencies of everyday life such as house payments, etc. None of them have (sic) demonstrated organic disease and all of them have had rather bizarre and hysterical complaints. Apparently a rather poor work situation exists there with a great deal of tension, part of it racial and part of it socio-economic. Long absences from work paid up to the patient's full eligibility based on length of service are not uncommon as I understand it from the plant physician. In summary then, this patient demonstrates a rather bizarre visual 'loss' which is not objectively documented and severe occipital pains and thoracic pains which show no objective corroboration. I can see no disability in this patient.

"I trust the above will be of some assistance to you in your determination. Thank you for the privilege of seeing Mrs. Dunn."

(6) A Missouri Vocational Rehabilitation Medical Report on "Visual Disability" dated July 26, 1969, signed by Felix N. Sabates, M.D., in which it is noted that plaintiff's visual acuity for reading is "Less than J 14/35" in both eyes; that color perception was impossible to ascertain because of "poor vision"; that plaintiff's condition was "stable"; that no medical or other therapy was recommended; that plaintiff need not avoid any type of activity; and that "This patient has normal eyes and I could find no ocular pathology to explain the poor visual acuity in both eyes." According to the table attached to the

report, a measurement of 14/35 means a percentage loss of sight of 23.5%.

(7) A "Report of Contact" dated August 5, 1969, signed by Raymond E. Allison, Assistant Superintendent of the "State Agency," purporting to record the result of a telephone contact with the "Record Room at KU Medical Center." The report reads as follows:

"It is noted in the file that Dr. Coles said he saw the W/E for trauma from an accident on 12/24/68 and that he referred her to Dr. Lemoine at KU Medical Center. It is interesting to note that on the 430 taken at the time of the initial application, she did not at all mention that she had been seen at KU Medical Center. Apparently the counselor at the previous determination then checked with her about her KU number and secured records from the hospital at that time. These consisted of reports of treatment following an automobile accident in December 1967. Dr. Lemoine is an ophthalmologist. We note that Dr. Abrams' report of examination on 5/21/69 does not indicate that she told him anything about having been seen by any eye doctor, although there is a considerable part of his report devoted to her eye problem.

"In order to clarify whether there were any additional records at the Medical Center, we called the records librarian at the hospital and explained the situation. She said she would check the records and call us back, which she did, and said that they have no other medical [record] than that which had already been sent and that they have no medical records there for 1968 on this W/E.

"When this case had come in, we discussed the whole thing thoroughly with our medical consultant and while the W/E submitted no new medical evidence with her request for reconsideration, it was felt in light of her alleged 'poor vision' that we should have her seen by an ophthalmologist. As noted, there is a report of this examination, while it shows very poor visual acuity and no visual fields obtainable, there certainly [is] no indication of any pathological condition which would cause this. We further note that her treating source in his original report indicates that while she has many complaints, he really is not able to varify (sic) any of them and it is felt that his report pretty clearly states the whole situation here. We also considered the possibility of a psychiatric evaluation but inasmuch as a consulting neurologist [Dr. Abrams] indicated that her mental status was rather unremarkable and observations by the claims personnel indicated that she was very cooperative and appeared neatly dressed gave no indication of any nerve problem and the ophthalmologist does not indicate any problem in this area, that it was not feasible to pursue this further at this time."

(8) Transcript of twenty-minute hearing which was held by a hearing examiner on December 15, 1969. In the hearing, the plaintiff testified that she quit her employment on October 14, 1968, at the Sunflower Ordnance Plant because she "slipped and fell" and "hurt my head and my back and from then on I was just—I mean I couldn't see. The next morning I was completely blind. I couldn't see nothing and after that everything was just a blur and it just got worse." The following questions were asked by the hearing examiner and the following answers given in respect to the issue of severity of impairment:

"Q  Now, what is wrong with your eyes? Can you see at all?

A  No. I just can't see at all, but on my right eye I can tell there's a light like that but I can't—

Q  Can you see light at all?

A  Just in my right eye, a little bit.

Q  How about your left eye?

A  No, I can't see anything out of my left eye.

Q  Are you able to walk around at all by yourself?

A Around familiar places like at home, you know. I know if I'm sitting in a chair I know where different things are at.

Q Now, is there anything else you want to tell me?

A Well, I mean, I need some help, some means of support."

(9) On December 19, 1969, the hearing examiner rendered a decision adverse to plaintiff, making the following findings:

## "ANALYSIS OF THE CASE

"Claimant testified that she had an accident October 14, 1968, while at work and as a result of her accident, she has only light vision in one eye and she is blind in the other eye. Assuming this to be true, the claimant would be disabled. However, in order to establish disability, claimant must establish her medical limitations with medical evidence.

"Examination of the claimant by a Board certified neurologist reveals that he can find no *objective* evidence establishing disability in the claimant. An examination by a medical specialist in the field of ophthalmology reveals that the patient has normal eyes, and he could find no ocular pathology to explain the poor visual acuity present in both eyes. [Emphasis added.]

"There is a complete absence of medical evidence in the claimant's file to substantiate any impairment, either as to eyes or any other problem which would prevent her from working at her normal occupation. Claimant's statements alone as to her medical condition cannot establish an impairment. There must be some basis established by medical evidence as to the condition and to the severity of the condition. Miss Dunn has not sustained her burden of proof and established an impairment.

## "DECISION

"Based on the entire evidence of record and of the foregoing considera-

tions, the hearing examiner finds that the claimant has not established that she has impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity at any time prior to the date of this decision. It is the decision of the hearing examiner that the claimant is not entitled to disability insurance benefits or to a period of disability under Sections 223 (a) and 216(i) of the Social Security Act, as amended."

As noted above, the decision of the hearing examiner is the decision which is to be reviewed as the decision of the defendant Secretary under the provisions of Section 405(g), *supra*.

## STANDARDS OF REVIEW

■ Section 405(g), *supra*, provides for judicial review of the final decision of the Secretary of Health, Education and Welfare, in the following terms:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The decision of the defendant can be affirmed on review by this Court if the following seven standards are met:

(1) the hearing procedures were fair and lawful, Jacobson v. Folsom (S.D.N.Y.) 158 F.Supp. 281, 284;

(2) evidence was received on the material factual issues, Fenix v. Celebrezze (W.D.Mo.) 243 F.Supp. 816;

(3) the findings of fact are supported by substantial evidence, Celebrezze v. Bolas (C.A.8) 316 F.2d 498;

(4) the findings of fact are sufficient to resolve the crucial factual issues, Hayes v. Celebrezze (C.A.5) 311 F.2d 648, 654, as well as the crucial legal issues;

(5) the correct legal standards were applied in determining the ultimate issues, Ferran v. Flemming (C.A.5) 293 F.2d 568, 571;

(6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case, Marion v. Gardner (C.A.8) 359 F.2d 175;

(7) it appears in finding the facts that claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings. Sec. 7(c), Ad.Proc.Act; Sec. 556(d), Title 5, U.S.C.; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed. 362.

On these requirements see Pollard v. Gardner (W.D.Mo.) 267 F.Supp. 890 at 903.

■ It is readily apparent from the foregoing record that the hearing examiner did not apply the correct legal standards in determining the ultimate issues. As a result, the hearing procedures were not fair and lawful and evidence was not received on the material factual issues. Furthermore, the findings of fact were not sufficient to resolve the crucial factual issues. And the conclusion that no medically determinable physical or mental impairment existed of such severity that it would prevent gainful activity is not supported by substantial evidence. In concluding that plaintiff had never had a medically determinable physical impairment of such severity that it disabled her from substantial gainful activity, the hearing examiner ignored plaintiff's testimony that she had only "light vision" in one eye and the testimony of plaintiff and her sister, who was present at the hearing with plaintiff, that she had been forced to quit her employment because of her blindness. The hearing examiner justified his ignoring of this testimony by stating that "Examination of the claimant by a Board certified neurologist re-

veals that he can find no objective evidence establishing disability in the claimant." In demanding that plaintiff establish her claim by objective medical evidence, the hearing examiner imposed an incorrect legal standard. It is true that under the 1967 amendments to the Social Security Act, the physical or mental impairment, to establish disability within the meaning of the Act, must be demonstrable by recognized diagnostic techniques. Section 423(d) (3), Title 42, United States Code. In Santiago v. Gardner (D.P.R.) 288 F.Supp. 156, 159, it was stated that:

"What the 1967 Amendments mean is that disability benefits will not be granted exclusively on the subjective complaints and assertions of the individual, but if there is medical evidence on record this can be used to support and corroborate the subjective symptoms. As declared in Senate Report No. 744, U.S.Code Congressional and Administrative News, 1967, pp. 2882–2883:

'Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability * * * unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions. * * *'

"The intent of Congress as expressed in the statute and in the legislative history was to emphasize the importance of medical factors in the determination of disability benefits."

While a finding of disability must, under the 1967 amendments, be supported by some medical evidence, it is not necessary that the claim be established by *objective* medical evidence. Indeed, in Whitt v. Gardner (C.A.6) 389 F.2d 906, 909–910, it was held to be reversible error to require support by objective medical evidence. It was said in that case:

"The Act nowhere states a requirement that a claimant establish his

disability by 'objective' medical evidence. In a case such as the present one, much of the evidence was subjective in nature, appellant's primary complaint being that of incapacitation because of extreme pain. This Court, as well as others, has considered the infection of an examiner's findings by such an erroneous legal standard to be reversible error, no matter what our own view be as to the correctness of his ultimate conclusion. See Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967) * * *. [W]hile [the 1967 amendments] confirm the examiner's requirement that 'the existence of an impairment must be established by * * * medical, clinical, or laboratory evidence,' they do not support his insistence that the medical evidence be 'objective.' "

See also Jenkins v. Gardner (C.A.6) 430 F.2d 243, 265; Huneycutt v. Gardner (M.D.N.C.) 282 F.Supp. 405, 411.

In the case at bar, however, the hearing examiner required that *objective* medical evidence support the finding. As a result, he ignored the following medical evidence of record which would support a finding of disability:

(1) The finding of Bernard Mark Abrams, M.D., that plaintiff's blindness was "hysterical". Both under generally prevalent schools of medical thought and the applicable regulations of defendant, hysterical blindness can constitute a medically determinable impairment within the meaning of the Act. See, e. g., Schmidt's Attorneys' Dictionary of Medicine, Vol. I, p. 442, to the following effect:

"*hysteria* * * *. A type of mental condition technically a psychoneurosis, in which exaggerated emotions become transformed into physical manifestations * * *.

"Hysteria may mimic almost any disease, *especially blindness*, paralysis, etc., and often simulates a state of hypnosis. It affects women, especially young women, more often than men. The cause or causes are not fully understood * * *." (Emphasis added.)

See also 20 C.F.R. 1539, appendix 12.03, p. 600, which provides that a psychoneurotic disorder is considered to be disabling if it is manifested by "persistent functional disturbances of vision * * *." Thus the diagnosis of Dr. Abrams that plaintiff's blindness was "hysterical" described an ailment recognized by the applicable regulations of defendant as a disability and constitutes medical evidence of the presence of that condition in plaintiff.

(2) The medical evidence of Dr. Abrams, furthermore, is corroborated by that of Dr. Sabates, who, after a Snellen test [1] administered by him to plaintiff, found poor visual acuity but no "ocular pathology" which would explain it. This is further medical evidence of the possible existence of hysterical blindness.

(3) The letter of Clarence O. Coffey, D.O., is further medical evidence tending to prove the existence of hysterical blindness in plaintiff, in its conclusion that plaintiff suffers from reflex and vision difficulties which are difficult to classify or type.

(4) There is further medical evidence in the file showing the possibility of the existence of other impairments in plaintiff. (a) The report of Dr. Palacios states that plaintiff's right arm was weakened as the result of an automobile accident on December 26, 1967. This same condition was manifest-

---

1. A test consisting of "[l]etters of various sizes printed on a chart in accordance with certain standards and used to test acuteness of vision at a distance." See Schmidt's Attorneys' Dictionary of Medicine, Vol. II, p. 731.

ed by the inability, whether feigned or real, of plaintiff to grip the fingers of Dr. Abrams, according to his report. The fact that Dr. Abrams was of the opinion that the inability was feigned does not erase the existence of that reported inability as medical evidence. A medical conclusion is not the same as medical evidence and medical findings control over medical opinions if the two are in conflict. Tiller v. Celebrezze (S.D.W.Va.) 211 F.Supp. 792, 795. (b) There is considerable evidence of pain in the evidence of record. Plaintiff complained of pain during the examination of Dr. Palacios after her automobile accident. She complained about it also to Dr. Abrams. The Report of Disability Interview of March 25, 1969, mentions it. Plaintiff specifically complained of eyeache, pain and numbness in her request for reconsideration. It is now well established that pain need not be proved by objective symptoms in order to warrant its consideration in a disability case. Jenkins v. Gardner, *supra,* 430 F.2d at 265: Anno. 23 A.L.R.3d 1014. See also Haskins v. Finch (W.D.Mo.) 307 F.Supp. 1272, 1279. But the hearing examiner paid no attention to the evidence of pain in this case, because he thought that it had not been shown by objective medical evidence. But the rule of Adams v. Flemming (C.A.2) 276 F.2d 901, and Theberge v. United States (C.A.2) 87 F.2d 697, 698, that pain must be demonstrated by objective medical evidence has been repeatedly repudiated. See Hayes v. Celebrezze (C.A.5) 311 F.2d 648; Anno. 23 A.L.R.3d 1014, 1044; McKerron v. Celebrezze (D.Mont.) 236 F.Supp. 382. See also Haskins v. Finch, *supra.*

█ Because the hearing examiner conducted the hearing under the erroneous legal standard that objective medical evidence was necessary to prove the existence of any impairment, the hearing procedures were not fair and lawful. Plaintiff (unrepresented by counsel) and her sister were given no opportunity by the examiner to testify in respect to the nature and severity of her blindness and how it affected her abilities and daily activities in ways which might be material to showing fitness or unfitness for any kind of substantial gainful activity. Neither were they asked any questions with respect to the current strength or weakness of plaintiff's right arm, the numbness of her side, her dizziness, nor the current existence or severity of pain. While the burden was on plaintiff in the administrative proceedings to adduce proof showing her entitlement to disability benefits, the hearing examiner is under an obligation to ask questions which will elicit such material evidence as can be offered. Hennig v. Gardner, (N.D.Tex.) 276 F. Supp. 622, 625; Coyle v. Gardner, (D. Hawaii) 298 F.Supp. 609; Stewart v. Cohen, (E.D.N.Y.) 309 F.Supp. 949, 956; 20 C.F.R. § 404.927. This the hearing examiner in the case at bar failed to do. This failure rendered the proceedings unfair and unlawful. Jacobson v. Folsom, *supra.*

█ The obvious result of the defective hearing procedures was the failure to take evidence on the material factual issues. In his decision the hearing examiner notes that plaintiff's testimony, if true, would entitle her to benefits. But he ignores her testimony for the stated (but erroneous) reason that no objective medical evidence exists in the record to support it. Therefore, the hearing examiner apparently deemed it inappropriate to permit plaintiff or her sister (or possibly other witnesses) to testify respecting the severity of plaintiff's blindness, or to her arm weakness, numbness or pain. But objective medical evidence, or the lack of it, is not to be considered in isolation, but rather together with the plaintiff's subjective complaints, medical opinion evi-

dence and the plaintiff's general background. Lackey v. Celebrezze (C.A.4) 349 F.2d 76. With respect to pain, it has been held that the hearing examiner must consider subjective evidence of pain and disability given by the plaintiff and corroboration offered by family, friends, coworkers and employers. Spivak v. Gardner (E.D.N.Y.) 268 F.Supp. 366. Further, substantial lay testimony respecting a mental condition or psychoneurosis must be considered. Clifton v. Celebrezze (N.D.Tex.) 228 F.Supp. 251, and, if uncontradicted, may carry great weight. Laws v. Celebrezze (C.A.4) 368 F.2d 640. Further, in cases like that at bar, when the medical evidence is inconclusive, lay evidence may well constitute the basis of decision. Stephens v. Ribicoff (C.A.4) 307 F.2d 304; Laws v. Celebrezze, *supra.* Plaintiff was thus foreclosed by the hearing procedures used by the hearing examiner from offering crucial evidence on the material factual issues.

The further result of the failure to take evidence on the material factual issues was that the findings of fact made by the hearing examiner are not sufficient to resolve the material factual issues. Plaintiff stated in her application for benefits that she suffered from "poor vision and head and back injury." In her request for reconsideration she stated that she could "only see outlines"; that her eyes ached and that she had pain across her shoulders and numbness of her left side. Further, medical evidence existed, as outlined above, to support those statements. In spite of the plaintiff's claims and medical evidence to support them, the hearing examiner effectively limited plaintiff's testimony to that of the possible existence of blindness. This would have required under the Act, a showing of central visual acuity of 20/200 or less in the better eye with the use of correcting lenses. Section 416(i) (1), Title 42, United States Code.[2]

In Ferguson v. Celebrezze (W.D.S.C.) 232 F.Supp. 952, 956, however, it was noted that:

"[A] person can be disabled either by statutory blindness or by other medically provable impairments. It is conceded in this case that the plaintiff does not fall within the requirements of statutory blindness, however, it is obvious that the blindness which the plaintiff does have and which is medically substantiated is sufficient to constitute a disability * * *. The Act does not provide that all blindness must be statutory nor that the plaintiff be automatically considered able instead of disabled. There exists, in this case, a combination of impairments which, when taken together, constitutes a total disability within the meaning of the Act, even though each individual impairment may not in and of itself be of sufficient severity as to be disabling."

See also Selewich v. Finch, (D.Mass.) 312 F.Supp. 191, 195. All complaints of a social security disability claimant "must be considered together in determining her work capacity". Burns v. Celebrezze, (W.D.N.C.) 234 F.Supp. 1019; Pollard v. Gardner, *supra;* Lunsford v. Celebrezze (W.D.S.C.), 238 F. Supp. 683; Haskins v. Finch, *supra*, 307 F.Supp. at 1279. Plaintiff and her sister, who was present at the hearing with plaintiff, and other witnesses should have been granted a reasonable opportunity to testify respecting the severity of her blindness, the presence or absence of symptoms of hysteria, the presence or absence of pain and its severity, and the nature and degree of the impairment of her right arm and back and her left side. But no testimony was taken, and no findings consequently made in respect to these other possible medically determinable physical or mental impairments. The hearing examiner's general finding that "claimant

---

2. In Kindig v. Ribicoff (E.D.Va.) 202 F. Supp. 198, in which only the claim of blindness was made, the Court held that

the plaintiff must either meet the statutory degree of blindness or have his claim for benefits fail.

has not established that she has impairments, *either singularly or in combination,* as to preclude her from engaging in substantial gainful activity" (emphasis added) cannot suffice in this regard when he at no time evinced any recognition that pain, psychoneurosis or arm, back or side impairment constituted issues in this case, or that plaintiff and her sister might have testified respecting the presence, severity and duration of blindness and the other disorders.

Finally, in view of the foregoing, the conclusion of the hearing examiner that no medically determinable impairment ever existed to prevent plaintiff from engaging in substantial gainful activity is not supported by substantial evidence. As noted above, plaintiff has shown by uncontradicted evidence that a medically determinable physical or mental impairment may exist. She may be afflicted by blindness induced by hysteria or possibly has some other physical reason than simple "ocular pathology". The pain evidenced by the 1967 medical report may or may not have continually persisted since that time, but plaintiff was given no specific opportunity to say. Further, the continuing and current condition of her arm was not elicited from plaintiff by the hearing examiner. The only opinion evidence which conclusively ruled out any pathology at all was the opinion of Dr. Abrams which was contrary to his clinical finding of hysterical blindness. Such evidence cannot constitute "substantial evidence," when the opinion is contrary to the clinical findings on which it is based. Mullen v. Gardner (E.D.N.Y.) 256 F.Supp. 588.

■ Plaintiff may have made a *prima facie* case by showing by substantial evidence the presence of a medically determinable physical or mental impairment which could be expected to last, or had lasted, twelve months or more at the time of the administrative hearing by reason of which she was forced to leave her last employment. If she has, the determination of non-disability by de-

fendant should ultimately be reversed and defendant directed to award benefits from whatever onset-of-disability date is established by the evidence. Neither a determination that a medically determinable physical or mental impairment never existed nor that it did not prevent plaintiff from engaging in substantial gainful activity is supported by the evidence of record. At the same time, plaintiff has met her burden of going forward to produce evidence. But she has been prevented by the erroneous legal conclusions of the hearing examiner from offering evidence of (1) continuing subjective symptoms of the possible psychoneurotic disorder of hysterical blindness or other types of blindness, (2) the continued severity of blindness from October 14, 1968, in such a degree that it prevented engagement in substantial gainful activity for twelve months or more, (3) the continuation of pain since 1967 and its severity, (4) the continued weakness of her right arm, (5) numbness of her left side and dizziness, and the respective severities of each of those conditions. In such circumstances, a remand to the Secretary for the taking of further evidence on these issues is justified before a final judgment of this Court is made on the question of whether the decision of the Secretary should be reversed. Under the controlling provisions of Section 405(g), Title 42, United States Code, the ultimate district court judgment affirming, modifying or reversing the decision of the Secretary may be made "with or without remanding the case for a rehearing." The decision of whether or not a remand is necessary is in the sound discretion of the district court, after the filing of the answer, for good cause shown. Bohms v. Gardner (C.A.8) 381 F.2d 283, cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164. It is apparent from the foregoing that remanding this case to the Secretary for a rehearing is justified by good cause shown in the record. Bohms v. Gardner, *supra.*

To her motion for summary judgment in this Court, plaintiff has attached four exhibits as follows:

(1) Exhibit No. 1 purports to show that she was granted an excused absence for medical reasons from Hercules, Incorporated, in the Sunflower Army Ammunition Plant ("Sunflower Ordnance Plant") from October 15, 1968, through November 30, 1968, and that she was terminated on January 18, 1969, as "unsuitable for production work and no other job available".

(2) Exhibit No. 2 is a letter dated December 26, 1968, from Richard N. Barr, M.D., to the Medical Director of Hercules Incorporated which states plaintiff's vision to be 20/200 with only a little macular irregularity upon which a diagnosis of "hysteria" is made.

(3) Exhibit No. 3 is a letter dated October 31, 1968, from Richard E. Whitehead, M.D., to the Medical Director of Hercules Incorporated stating that plaintiff was suffering from a sprain of the cervical spine, thoracic muscular sprain and muscular lumbar sprain and from severe occipital headaches, blurred vision and pain.

(4) Exhibit No. 4 is a letter dated November 30, 1970, from Alvin J. Baer, M.D., to plaintiff's counsel in the case at bar, in which it is remarked that an examination of the plaintiff's eyes on November 27, 1970, revealed "yellowish discoloration of the discs and of the mascular lesions" and "choroiditis around the optic nerve" leading to the conclusion that "This patient must be considered totally blind."

Defendant has moved to strike the exhibits, stating that "under 42 United States Code § 405(g) the decision of the reviewing court may be based only upon the pleadings and the transcript of the administrative record. It has no authority to accept or consider evidence outside the administrative record. This review is not a trial *de novo*." Numerous cases are cited in support of those propositions.[3] But that motion need not be determined in the case at bar, when it has been determined on the basis of deficiencies in the administrative record that a remand is justified. As was stated in Carnevale v. Gardner, (C.A.2) 393 F.2d 889, 891, n. 1:

"It should also be noted that when this case was before the district court the appellant, who has acted *pro se* from the very commencement of his claim, attempted to have an official notification from the hospital regarding his August 1961 operation inserted into the Record. The district court refused to allow it, stating that the notification should have been incorporated into the Record during the administrative phase of the proceedings. While the district court may have been technically correct in refusing to take into consideration in its review of the case any materials not properly in the administrative record, see 42 U.S.C. § 405(g); Fels v. Ribicoff, 30 F.R.D. 141 (S.D.N.Y.1962); Sage v. Celebrezze, 246 F.Supp. 285 (W.D.Va. 1965), it was within the court's power to remand the case to the administrative agency with directions that the additional evidence be there inserted into the record and that the claim be administratively reconsidered in light of the added evidence. 42 U.S.C. § 405(g). See Bohms v. Gardner, 381 F.2d 283 (8 Cir. 1967); Sage v. Celebrezze, supra."

---

3. "Irvin v. Hobby, 131 F.Supp. 851 (N.D. La.1955); Morales v. Ribicoff, 199 F. Supp. 402 (D.P.R.1961); Fels v. Ribicoff, 30 F.R.D. 141 (S.D.N.Y.1962); Pace v. Celebrezze, 218 F.Supp. 428 (D. Ore.1963); United States v. Carlo Bianchi & Company, 373 U.S. 709, 715,

83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); Bridges v. Gardner, 368 F.2d 86 (5th Cir. 1966); Gray v. Gardner, 261 F. Supp. 736 (D.S.C.1966); and Whaley v. Gardner, 255 F.Supp. 862 (E.D.Mo.1966), affirmed 374 F.2d 9 (8th Cir. 1967)."

This cause will accordingly be remanded to the Secretary for the taking of further evidence, including further testimony and the few exhibits attached to the motion for summary judgment. The motion to strike will accordingly be deemed as moot. It is therefore

Ordered that this cause be, and it is hereby, remanded to the Secretary for the taking of further evidence. It is further

Ordered that defendant's motion to strike be, and it is hereby, denied as moot.