Earl E. KENNEDY, Appellant,

v.

Elliott RICHARDSON, Secretary of Health, Education and Welfare, United States of America.

No. 19549.

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1971.

Decided Jan. 28, 1972.

W. J. Krencewicz, Shenandoah, Pa., for appellant.

Jeffrey M. Miller, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., on the brief), for appellee.

Before BIGGS, ADAMS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

A Hearing Examiner of HEW decided that the appellant Kennedy was not entitled to disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423.[1] The Appeals Council sustained the Examiner's decision and it became the decision of the Secretary. The District Court reviewed and upheld the decision of the Secretary, granting his motion for summary judgment. 42 U.S.C. § 405(g). The appeal followed. We must determine whether the decision of the Secretary was supported by substantial evidence and is in accordance with law.

Kennedy has an extensive medical history. He was born in Pennsylvania on January 23, 1913 and while in elementary school broke his right elbow creating a permanent deformity. He completed the eighth grade but then quit school and entered his father's employ in a family grocery store. Leaving that employment he worked in various semi-skilled occupations which need not be detailed here. In 1954 he was employed by Bethlehem Steel Company and while there received a forty to fifty percent disability settlement for a further injury which occurred to his right elbow and also to his right hand. In 1960 or 1961 while working on a roof in Florida,[2] he fell thirty feet when the rung of a ladder broke which caused an injury to his back. He was out of work for six months. In September 1962 he was working as a truck driver and loader for Hahn Trucking Company. While helping to carry two steel plates with his "boss" the latter slipped and Kennedy was dragged down by the weight of the plates. He spent the next eleven months recovering from a severe back sprain and spent a considerable portion of this period in clinics in the Pottstown area, in Philadelphia and at Johns Hopkins. In April 1963, having been discharged from Hahn, he bought a truck and endeavored to maintain himself by self-employment but his back would not permit him to work regularly. During this period of self-employment he had earnings

1. The record shows the following: "[Kennedy] initially alleged inability to work due to 'back and arm trouble' beginning in June 1965, which was approximately nine months after his earnings requirements had expired. However, he subsequently changed the alleged onset date to August 1964." The reason for this discrepancy remains undeveloped in the record. Had Kennedy adhered to his original position he would not be entitled to disability insurance benefits.

2. The name of his employer does not appear from the record but it is not suggested that he was self-employed.

as set out below.[3] He testified that the condition of his right hand forced him to stop driving his truck or any other vehicle after 1968.

Following the second injury to Kennedy's back, Dr. Boyle at St. Joseph's Hospital in Philadelphia diagnosed Kennedy's X-Rays as showing "[m]oderately advanced degenerative osteoarthritic change lumbo-sacral spine with loss of normal lordotic curve, presumably due to muscle spasm." In 1966, Dr. Zerbe who was then Kennedy's doctor, treated him for his back injuries. Dr. Zerbe became ill and in 1967 Kennedy consulted Dr. Robinson. Dr. Robinson, a general practitioner, reported: "Skeletal x-ray [sic] of . . . [Kennedy's] pelvic, low back, thorax and chest are not remarkable." This evidence and Kennedy's previous medical history were before the Examiner who treated September 30, 1964 as the critical date to meet the special earnings requirements of the Social Security Act.[4] The Examiner's Report was handed down September 23, 1969. The Examiner found that ". . . none of the claimant's complaints can be confirmed by laboratory and clinical tests." Kennedy appealed to the Appeals Council on September 29, 1969. On some day not clear from the record Kennedy was referred by Dr. Robinson to Dr. Glenney.[5] Dr. Glenney's report is in direct contradiction to the Examiner's conclusion quoted above. Dr. Glenney's report stated: "The prognosis for reha-

bilitation in my professional opinion, is very doubtful. *In his present physical state he is unable to do any gainful occupation.* Whether or not any improvement can be made in the status of the arthritis of the dorsal and lumbar spine with the suspected intervertebral disc disease, of course, cannot be stated until the recommended examinations have been done." (Emphasis added.) [6]

Dr. Glenney's report was sent to the Appeals Council. It would appear that it was received by the Council on or before October 25, 1969 for the Council filed a memorandum in Kennedy's case stating: "Evidence in addition to that which was before the hearing examiner has been received by the Appeals Council is hereby made a part of the record. That evidence consists of the following exhibits: Exhibit AC–1 Medical report dated October 18, 1969, signed by W. R. Glenney, M.D."

Dr. Glenney had before him the X-Rays taken by Dr. Robinson. He also had Kennedy X-Rayed again and evaluated all the X-Rays. Dr. Glenney's report, as we have stated, contradicts the quoted finding of the Examiner relied on by the Appeals Council and apparently by the Secretary. No reason is given insofar as we can perceive from the record as to why the Appeals Council rejected the additional evidence set out in Dr. Glenney's report but did receive it in the record. It is necessary to vacate the judgment of the District Court with

3. In 1965 and 1966, Kennedy reported no earnings. In 1967, he reported net earnings of approximately $450 and in 1968, he reported net earnings of approximately $325. As to whether these earnings constituted "substantial gainful activity" within the purview of 42 U.S.C. §§ 416(i) and 423 will be discussed at a later point in this opinion.

4. Consistent with this finding Kennedy must be found to have been disabled on or before the stated date in order to be covered by disability insurance. The Examiner stated in his Report, at 2: "Claimant last met the special earnings requirements of the Social Security Act in the quarter ending September 30, 1964."

We accept the date of September 30, 1964 as the critical date as found by the Examiner. We are of the opinion that the amounts earned do not amount to "substantial gainful activity." We adopt the reasoning of Meola v. Ribicoff, 207 F.Supp. 658, 661, n. 4 (S.D.N.Y.1962) and Flemming v. Booker, 283 F.2d 321, 324 (5 Cir. 1960).

5. Kennedy states in a letter written to the Appeals Council that Dr. Robinson informed him that Dr. Glenney was a specialist. This statement is apparently not controverted in the record though the record does not disclose what was Dr. Glenney's specialty.

6. See Record at 139–145.

the direction to refer the matter back to the Secretary for reconsideration and appropriate action.

Another matter seems to require attention. Kennedy filed an application in 1948 for a Social Security Account Number and received account No. 207–24–9715 and six years later, another application was filed under the name of Earl Obrien and received account No. 064–30–8459. There is similarity between the data on the respective applications and it may be that Kennedy was the applicant shown on both applications.[7] What significance this may have in respect to the granting or denying of Kennedy's application for disability benefits we cannot tell. No comment appears in the Examiner's Report respecting the two applications.

An order will be entered in accordance with this opinion remanding the case for the purposes indicated.