Martha **LONGO**, Plaintiff,

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 72–1894.

United States District Court, E. D. Pennsylvania.

Jan. 17, 1974.

Robert M. Pressman, Philadelphia, Pa., for plaintiff.

Richard J. Stout, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I

This is an action under the Social Security Act, 42 U.S.C. § 405(g),[1] to review a final decision of the Secretary of Health, Education and Welfare, which denied the claimant, Mrs. Martha Longo, disability insurance benefits and the establishment of a period of disability under 42 U.S.C. §§ 423 and 416. It is before the Court on cross motions for summary judgment.

We decide that the hearing examiner applied an incorrect standard of law and, accordingly, remand for further proceedings consistent with this opinion.

To qualify for disability insurance benefits and a period of disability, an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and be under a disability as defined in 42 U.S.C. § 423(d):

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means

---

1. 42 U.S.C. § 405(g), as pertinent, reads as follows :

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides. . . . As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The Court shall have power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered . . . which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation . . ., the court shall review only the question of conformity with such regulations and the validity of such regulations. The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary . . .".

work which exists in significant numbers either in the region where such individual lives or in several regions of the country. . . .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

. . . . . .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Claimant filed her application for disability insurance benefits on June 1, 1971. Her claim was denied and this decision was upheld on claimant's request for reconsideration. A hearing was requested and held on March 23, 1972. On May 23, 1972, the Hearing Examiner denied the claim. By letter of July 31, 1972, the Appeals Council upheld the Hearing Examiner's decision.

## II

The evidence in this case consists of the reports of several doctors, hospital records and the statements and testimony of the plaintiff at the hearing and in two disability interviews.

The claimant last met the insured status requirements of the Act on September 30, 1969 [2] and, consequently, to be entitled to a period of disability or disability insurance benefits, her disability must have arisen on or before that date. Kennedy v. Richardson, 454 F.2d 376, 378 n. 4 (3rd Cir. 1972); Domozik v. Cohen, 413 F.2d 5, 6 (3rd Cir. 1969).

Mrs. Longo was born on November 2, 1919, and was 52 years of age at the time of the hearing examination.

In her application for benefits, claimant stated her disability as bursitis and trigger fingers. She had stopped work in December of 1963 or Spring of 1964 and claimed that she had been unable to work since that time. Although her overall claim includes physical, emotional and mental symptoms, her most distinct ailment related to her work involved pain in her shoulder area and tingling and numbness of her hands with consequent impairment of her ability to grip objects. Claimant's last job was at Daroff's, a clothing manufacturer, where she had worked for about nineteen (19) years. Mrs. Longo's job involved marking, matching, and trimming coat sleeves, tabs and cuffs. This work required speed and dexterity since she worked piecework and needed to manipulate objects with her hands. Claimant would spend half her day sitting and half standing with intermittent stooping and bending to lift bundles of fabric to work on.

The claimant presented statements and testimony covering all her conditions and their effect on her activity both for the periods before and after the expiration of her insured status. She lives with her husband, Daniel, who, it was discovered in May of 1964, has lymphoma of the duodenum and who has received disability benefits since 1969 when he stopped working.

The record contains information on a series of operations which the claimant has undergone. The first operation was in December, 1967, when she had a cyst removed from her ovary. In April of 1969, claimant was operated on for uterine bleeding. In April through May of 1970, plaintiff was in the hospital for an hysterectomy. All of these above operations were performed by Dr. Cancelmo. Moreover, in June of 1971, a tenoplasty was performed on the fourth fingers of both claimant's hands. There was no sign of arthritis but the tissue was found to be compatible with tenosynovi-

---

2. The Hearing Examiner found that claimant met the special earnings requirements for disability benefits through September 30, 1969. The Court recognizes that there is some controversy as to whether or not the correct date is June 30, 1969; however, the difference between the two dates is of no material significance in light of the basis of the Court's present disposition of the case.

tis. In February of 1972, a carpel tunnel operation was performed on claimant's right wrist and a diagnosis of carpel tunnel syndrome was made. Both of these latter operations were performed by Dr. Auday.

The record also contains the reports of three physicians which are set out in more detail as they are the focal point of our disposition of the case.

The reports of Dr. Shucker, of the Sidney Hillman Medical Center, state that the claimant has been attending the Center for many years. He states, further, that Mrs. Longo is primarily being treated for a tension state with numerous psychosomatic manifestations with increased severity since her husband, Daniel, has a serious medical problem. Her husband was found in May of 1964 to have lymphoma of the duodenum and his condition has worsened since that time. Dr. Shucker notes that plaintiff complains of weakness and numbness in both hands and has trigger fingers; that she complains of pain in the right upper extremity from the shoulder to the fingers which is diagnosed as probably bilateral brachial neuritis which has resisted all attempts at therapy. The doctor notes the tenoplasty operation but states that she still complains of weakness and numbness in all fingers of her hands. Finally, he states that she is currently being treated for carpel tunnel syndrome of the right hand and cervical spondylosis, with bilateral brachial neuritis. In the opinion of the attending physicians at the Center, claimant has reached the point where she is no longer able to work.

The reports of Dr. Cancelmo state that he has treated the plaintiff since 1967. He reports that in April of 1969, when she was in the hospital for uterine bleeding, she complained severely of pain and weakness in her arms and legs. The doctor also notes her husband's malignant disease and states (unspecifically as to time) that she then became mentally and physically unable to work. The doctor concluded that the outlook for gainful employment is bad because of the combination of mental and physical problems.

Finally, there are the reports of Dr. Trombetta, who has been plaintiff's physician for 30 years.

Doctor Trombetta relates the claimant's medical history as far back as 1961 when she was hospitalized with severe abdominal pains. X–ray findings were negative and he concluded that the pain was due to nervous exhaustion. He states that she was under constant depression as of that early date and he, consequently, advised her to stop work in 1962. In 1964, claimant began seeing the doctor for what he diagnosed as severe bursitis of the right shoulder and problems with her ring finger which resulted in her dropping everything. In 1964, of course, her husband's disease was discovered and he states that over time this has wrecked claimant's nerves. At that time, he again advised the claimant to stop working. He states that, as of 1967, claimant was permanently physically and mentally unable to do any kind of work, and that he demanded that she stop work and she has not been able to work since that time. At this time, she suffered from migraine headaches and severe mental depression and had to take drugs. He further states that, as of 1968, her condition had worsened to the point where she was suffering from pain in both hands as well as weakness and dizziness. In his letter of March, 1972, the doctor states that claimant's present problems were also present as of 1967. He describes the claimant, generally, as an hysterical, emotionally unbalanced person on her way to a nervous breakdown contributed to by her husband's grave illness.

### III

The Hearing Examiner presented a detailed summary of the allegations and testimony of the plaintiff and listed the medical reports and records submitted. He then stated that, in determining whether the claimant had physical and/or mental impairments of such severity as to prevent her from engaging

in any substantial gainful activity, primary consideration must, by law, be given to the severity of impairments as evidenced by the medical facts.

The Examiner summarized the medical reports of Doctors Cancelmo, Shucker and Trombetta and stated that, while these statements of claimant's physicians and their opinions were entitled to and had been given considerable weight, he did not believe that a finding of disability can be predicated on these statements. He then set out 42 U.S.C. § 423(d)(3) and 20 C.F.R. 404.1514(c) and concluded that the medical reports submitted on behalf of the claimant did not meet the specifications set forth in the above statutory section and regulation. As to each of the doctors reports respectively, the Examiner concluded they were devoid of clinical and laboratory findings which would permit a determination of the exact nature and limiting effect of the claimant's physical or mental impairments during the period when she was still insured.

Finally, the Examiner addressed himself to the claimant's hysterectomy and carpel tunnel operation and evaluated the evidence, including the physicians' statements, of mental and emotional distress along with some other items.

The Examiner made specific findings on the basis of "the preponderance of the credible evidence" and, as relevant here, found:

"The claimant suffers pain in the shoulders, low back and hands and has had some female trouble for which she was operated successfully. She is also alleged to have psychic and somatic symptoms; *however, there are no clinical and laboratory findings sufficiently comprehensive and detailed to permit a determination that the claimant's physical and/or mental impairments were of such a nature and had such limiting effects as to render her incapable of continuing at her job of a table worker in a men's clothing factory as of a time before her insured status expired.*" (emphasis added)

## IV

We believe that the Hearing Examiner applied an incorrect standard of law in reaching his decision. We do not disagree that under the law objective evidence of an impairment is given great weight in making a determination. However, although the Hearing Examiner stated that the reports and opinions of the physicians, which were presented, were entitled to and were, in fact, given considerable weight, he then concluded, after setting forth some of the Secretary's regulations, that the medical reports submitted did not meet the necessary specifications. As to the reports of each of the three physicians, specifically, he concluded they were devoid of clinical and laboratory findings sufficient to permit a determination as to the exact effect of claimant's impairments.

The law, in this area, requires that a determination of disability be made from all the facts, although objective evidence should be given great weight. Bittel v. Richardson, 441 F.2d 1193, 1195 n. 4 (3rd Cir. 1971); 20 C.F.R. § 404.1502(a).

"The Act and the regulations promulgated by the Secretary pursuant to it require a subjective determination of the claimed disability. Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof." (Footnotes omitted)

Bittel v. Richardson, *supra.*

The reports of the doctors as to various ailments of the claimant, while not objective, are certainly evidence which meets the standards of the Act and the regulations. Subjective evidence alone is sufficient to establish a disability. Bittel v. Richardson, *supra*; Flake v. Gardner, 399 F.2d 532, 540–541 (9th Cir. 1968); Dunn v. Richardson, 325 F. Supp. 337, 343–345 (W.D.Mo.1971).

The Hearing Examiner proceeded to evaluate and make specific findings in

regard to the evidence relating to the ovarian cyst operation, the hysterectomy, and any possible mental impairment. He further stated that it was probable that the claimant left work in 1964 to care for her family and that, in addition, her failure to file a claim for herself in 1969 when she filed for her husband was probative of the fact that she, at that time, did not consider herself disabled. However, these findings do not amount to a finding of non-disability.

■ The Hearing Examiner's failure to evaluate and make findings with regard to the evidence presented in the physicians' reports, at least some of which relate to the period when claimant was still insured, except for the statements noted above, persuades the Court that the Hearing Examiner applied an incorrect legal standard. Considering all the statements of the hearing examiner in this regard, in light of his entire decision, we conclude that he believed that the reports were inadequate evidence of a disability because of their lack of objective findings. Thus, remand is appropriate both because it is unclear what the agency decision means, United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 510–511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935), and because, by reason of the application of an incorrect standard of law, critical fact findings were not made. Frith v. Celebrezze, 333 F.2d 557, 561 (5th Cir. 1964); Egan v. Gardner, 277 F.Supp.

929, 932 (N.D.Cal.1968); Goodwin v. Gardner, 250 F.Supp. 454, 457 (N.D. Cal.1966).

■ The statements of the physicians are to be considered in light of the rule that medical evidence, though entirely subjective, may establish a disability; and, the evidence of impairment or impairments therein, is to be considered with any other evidence of impairments, to determine cumulatively whether claimant suffered from a disability while still insured. Bittel v. Richardson, *supra.*

■ Thus, we remand in order for the physicians' evidence to be fully considered without it being inherently discounted simply for its subjectivity. The plaintiff's evidence, of course, must satisfy the requisite burden of proof.[3] Bittel v. Richardson, *supra.* Moreover, it is the duty of the Hearing Examiner to make the necessary findings of fact and, in connection therewith, to evaluate the credibility of witnesses, including the opinions of physicians, and to resolve conflicts and inconsistencies in the evidence. Townsend v. Secretary of Health, Education and Welfare, 325 F. Supp. 982, 986 (E.D.Ky.1971). The Secretary need not accept as credible the entire subjective testimony of a claimant nor of a doctor. Reyes Robles v. Finch, 409 F.2d 84, 87 (1st Cir. 1969) but he must, at least, deal with such testimony and make the appropriate findings. Reyes Robles v. Finch, *supra*; cf. Ken-

---

3. It is not until the claimant proves an impairment which results in the inability to resume former work that the burden of producing evidence—i. e. that substantial gainful work exists in the national economy for a person of claimant's age, education and work experience and suffering from his or her sort of impairments—shifts to the Secretary. Of course, there need not be evidence that the claimant would, in fact, be hired. However, the decision that a claimant is not disabled for this reason must be supported by explicit findings of all the facts that are essential to the conclusion of ineligibility, i. e. there must be a finding that jobs which

claimant is able to perform existed in significant numbers in a specified region at the relevant time. See, Garrett v. Richardson, 471 F.2d 598, 603–604 (8th Cir. 1972); Keating v. Secretary of Health, Ed. and Welf. of United States, 468 F.2d 788, 790–791 (10th Cir. 1972); Meneses v. Secretary of Health, Education and Welfare, 143 U.S. App.D.C. 81, 442 F.2d 803, 806–808 (1971); Garrett v. Finch, 436 F.2d 15, 18 (6th Cir. 1970); Cf. Choratch v. Finch, 438 F.2d 342, 343 (3rd Cir. 1971); Gentile v. Finch, 423 F.2d 244, 248 n.5 (3rd Cir. 1970); Baker v. Gardner, 362 F.2d 864, 868 (3rd Cir. 1966).

nedy v. Richardson, 454 F.2d 376, 378 (3rd Cir. 1972). Of course, the subjective testimony of the claimant also must be considered and evaluated in a similar manner.

■ There are, of course, circumstances where subjective evidence alone can be sufficient to prove disability or, at least, raise a serious question such that a systematic evaluation thereof is necessary to afford a basis for a finding of nondisability. Ber v. Celebrezze, 332 F.2d 293, 298–300 (2nd Cir. 1964).

■ Finally, we note that claimant's counsel argues that the application of the regulations in this case will result in a travesty of justice, for the doctors the claimant saw, at the time she was still insured, did not keep the types of records that are required nor does plaintiff have the types of illnesses that are verifiable by laboratory or objective tests. Of course, we have already explained that subjective medical evidence is not to be discounted solely because of its non-objective nature. This goes far toward meeting counsel's contentions. Nevertheless, at the same time, such evidence will be of a type where credibility will be a significant factor in evaluation, and, consequently, great deference is given to the Hearing Examiner's evaluation and resulting conclusions. Moreover, the absence of objective evidence is not necessarily without any significance whatsoever. To the extent the Hearing Examiner thinks objective proof of an illness is applicable, he may well consider its absence probative. The plaintiff has the burden of proof in this regard. Moreover, the Hearing Examiner may think that the possibility of objective proof may have relevance even in this case despite the fact the insured status ended in 1969; for example, as somewhat corroborative of any subjective evidence.

We make the above comments because of the fact that since we must remand to the Secretary, we will do so with in-structions that either party be permitted to offer further evidence if they so desire. Cf. Nelms v. Gardner, 386 F.2d 971, 973 (6th Cir. 1967).