**Fred G. SCHAAF, Appellant,**

v.

**David MATTHEWS, as Secretary of Health, Education, and Welfare.**

**No. 77–1498.**

United States Court of Appeals, Third Circuit.

Argued Jan. 10, 1978.

Decided March 17, 1978.

Nicholas M. Panko, St. Clair, Pa., Anthony J. Miernicki, Shenandoah, Pa., for appellant.

David W. Marston, U. S. Atty.; Walter S. Batty, Jr., Michael B. L. Hepps, Asst. U. S. Attys., Philadelphia, Pa., for appellee; Stephanie W. Naidoff, Regional Atty., Joan E. Kaehne, Asst. Regional Atty., Aaron M. Smith, Legal Assistant, Dept. of Health, Education and Welfare, Philadelphia, Pa., of counsel.

Before ADAMS, BIGGS and WEIS, Circuit Judges.

### OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from a denial of black lung benefits. Because the record does not disclose the basis for a crucial element of the Secretary's findings, the matter will be remanded.

Fred G. Schaaf, now 78 years old, worked in coal mines for thirty-six years. In January of 1970, Schaaf filed an application for black lung benefits. The claim was denied initially in November of 1970, and rejected twice on administrative reconsideration under the 1972 Amendments. On January 16, 1972, after a hearing, an administrative law judge affirmed the denial. The administrative law judge's decision was approved by the Social Security Appeals Council. Denial of Schaaf's claim then was affirmed by the District Court for the Eastern District of Pennsylvania. An appeal from the district court's decision is now before us.

As we recently outlined in *Gober v. Matthews*,[1] an applicant for black lung benefits who has worked in the mines more than 15 years can claim entitlement on the basis of any of three showings: (1) X-rays "establishing" pneumoconiosis, (2) ventilatory tests demonstrating disabling respira-

1. No. 77–1499, 574 F.2d 772 (3d Cir. 1978).

tory disease, or (3) "other relevant evidence" establishing disability due to respiratory disease.[2] In this case, the claimant provided all three varieties of evidence.

■ Schaaf submitted two X-rays which were read as "compatible with" pneumoconiosis, and one which was interpreted as definitely demonstrating pneumoconiosis. However, the two "compatible" X-rays were each reread by three other physicians as completely negative for pneumoconiosis, and a fourth X-ray was submitted which was construed by two physicians as negative. Regardless of our opinion of his action, the administrative law judge's decision that the X-rays failed to establish the existence of pneumoconiosis is not without substantial support in the record.[3]

Likewise, Schaaf submitted five ventilatory studies, and all but one would have qualified him for benefits. The administrative law judge found on the basis of the opinions of medical consultants that five of the studies were technically unsatisfactory. He also declined to accept the sixth study, on the ground that it "traced a single effort on FEV and made no tracing of MVV."[4] In view of the statement in the record by Dr. Harold Passes that studies with less than three individual tests "cannot be medically accepted,"[5] we are unable to conclude that the administrative law judge's decision in this respect was without substantial evidentiary support.

Schaaf also based his claim on "other relevant evidence." He testified that he suffers from a cough both morning and night which produces thick black phlegm. His breath is short, he can walk only half a block before he has to stop, and can climb only two or three steps at a time. Because of difficulty in breathing when he is fully reclined, he sleeps propped up. He has not been able to do household chores since the late 1960s.

In addition, Schaaf submitted letters from two physicians who have dealt with his medical difficulties, Dr. Gilbert Reed, a general practitioner who has been treating Schaaf since 1970, detailed his findings thus:

> My impression was that the patient is totally and permanently disabled due to anthracosilicosis first stage with bilateral emphysema. His hypertension and present diabetes mellitus which I have treated him for in no way contributes to his disability.[6]

Dr. John Mika, who had attended Schaaf since 1975 likewise set forth the results of his examination and stated:

> On the basis of the physical examination, the work history, the chest X-ray, and the pulmonary function study, it is my impression that Mr. Fred Schaaf is totally disabled due to anthracosilicosis and emphysema.[7]

The administrative law judge nonetheless determined that "the other relevant evidence, considered as a whole, does not demonstrate a level of severity as contemplated" in the applicable regulations.[8] It is unclear whether the administrative law judge accepted Schaaf's testimony as to the extent of his disability.[9] If Schaaf's testi-

---

2. See 20 C.F.R. § 410.401 *et seq.*

3. Our review of this case is limited to determining whether the decision denying benefits was supported by substantial evidence on the record as a whole, and is not arbitrary, capricious, or contrary to law 30 U.S.C. § 923(b); 42 U.S.C. § 405(g).

4. Tr. 13.

5. Tr. 107.

6. Tr. 113.

7. Tr. 115.

8. Tr. 13.

9. The administrative law judge declared:
   Claimant may well have breathing difficulty to some extent. He worked beyond age sixty, and is now seventy-three years of age, overweight and hypertensive. Each of these factors would affect his breathing ability to some extent. It is his burden to prove that lung dysfunction is the cause of any disability he may have. The burden has not been met. . . .
   The other relevant evidence, as a whole does not demonstrate a level of severity as contemplated in Section 410.426 of Regulations

mony was accurate, he was totally disabled, and the finding by the administrative law judge must be that Schaaf's disability was not caused by a respiratory disease.

■ This determination, however, conflicts with the uncontradicted diagnoses of two physicians who are currently treating Schaaf. We have before us only vague indications of why the administrative law judge refused to accept these diagnoses. He might have rejected the findings because he inferred from the non-qualifying ventilatory studies that Schaaf was unlikely to suffer from disabling lung disease.[10] But such an inference, as we explained in Gober v. Matthews, would be impermissible.[11] The administrative law judge might have declined to accept the doctors' studies on the ground that they were based on X-ray, interpretations which are discredited, and that the remaining clinical findings were too sketchy a predicate to establish the existence of a disabling respiratory dis-

ease. Or the administrative law judge might have improperly engaged in medical diagnosis of his own.[12]

■ An opinion such as the one before us thus does not adequately explain the reasons for refusing to credit uncontradicted medical evidence. Congress expected that under the 1972 Amendments the diagnoses of treating physicians would play a major role in the determination of eligibility for black lung benefits.[13]

For the administrative law judge to reject two such diagnoses without a clear statement of the reason for such rejection is unacceptable, particularly when there are intimations that the administrative law judge utilized improper inferences in reaching his conclusion.[14] It would be improper for us to speculate as to the administrative law judge's reasoning process, and the case, therefore, must be returned to the Secretary for a rehearing.[15]

No. 10. The evidence in this case does not demonstrate that level of severity (see Social Security Ruling 73–37, page 140).

10. This hypothesis finds support in the administrative law judge's reference to Social Security Ruling 73–37, which raises such a presumption.

11. No. 77–1499 at 10–11, at 777–778. See Bozwich v. Mathews, 558 F.2d 475 (8th Cir. 1977); Prokes v. Mathews, 559 F.2d 1057 (6th Cir. 1977); Morris v. Mathews, 557 F.2d 563 (6th Cir. 1977); Ansel v. Weinberger, 529 F.2d 304 (6th Cir. 1976); Henson v. Weinberger, 548 F.2d 695 (7th Cir. 1977).

12. Cf. Gober v. Matthews, supra, at 7–8, at 776–777. An indication of such an impermissible diagnosis is the administrative law judge's statement:

He worked beyond age sixty, and is now seventy-three years of age, overweight and hypertensive. Each of these factors would affect his breathing ability to some extent. (Tr. 14)

Not only is there no evidence in the record as to the medical effects of such factors, but Dr. Reed explicitly stated that Schaaf's hypertension did not contribute to his disability.

13. The Senate Report on the Amendments stated:

It is important also that medical histories, evidence submitted by a miner's physician, affidavits and other supporting evidence on

the miner's physical condition as it relates to pneumoconiosis and its sequelae be considered by the Social Security Administration.

S.Rept. 92–743 92d Cong. 1st Sess. (1972) reproduced at 1972 U.S.Code Cong. & Admin. News, pp. 2305, 2318.

The Report also quoted with approval the remarks of Dr. Donald Rasmussen:

I would like also to urge the people who administer the provisions of the black lung compensation to perhaps make more use of the opinion of the miner's family doctor in terms of the existence of lung disease . . . I think very little attention is paid to the fact that the doctor may well know his patient suffers one of the general respiratory diseases.

14. See Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974).

15. See Kennedy v. Richardson, 454 F.2d 376 (3d Cir. 1972) (remanding where no reason was given for rejection of examining physician's evidence in disability hearing); Arnold v. Secretary of HEW, 567 F.2d 258 at 259 (4th Cir. 1977), ("Thus we hold that the Secretary, in determining an applicant's entitlement to black lung benefits must consider all relevant evidence . . . and must indicate explicitly that such evidence has been weighed and its weight." The case was remanded.)

The judgment of the district court will be reversed, and the case remanded.[16]

16. In similar situations when reviewing a district court decision, we would *vacate* the judgment reviewed. Under 42 U.S.C. § 405(a) however, our options are limited to "affirming, modifying, or reversing the decision of the Secretary."