Andrew J. TILLER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1126.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 12, 1962.

Robert E. Lusk, Welch, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education and Welfare that he was not entitled to a period of disability or to disability insurance under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that the defendant's motion for summary judgment should be granted.

Plaintiff made application for a period of disability and for disability insurance benefits on September 20, 1960. In a decision dated October 10, 1961, the hearing examiner found that the plaintiff was entitled to a period of disability beginning on July 28, 1952, and to disability insurance benefits. The hearing examiner's decision, in effect, attempted to reverse a previous decision of the Appeals Council dated December 8, 1958, which affirmed a decision issued August 27, 1958, by a hearing examiner (formerly called a referee) who held that the plaintiff was not "disabled" within the meaning of the Act on or before March 31, 1954, the date on which he last met the special earnings requirements under the Act, as then written.

In the prior application and in the last application, plaintiff claimed that his disability began July 28, 1952. The last examiner explains his reversal of the prior examiner and the Appeals Council as follows:

"The examiner has carefully considered the foregoing evidence and all of the other evidence in this case and must disagree with the conclusions of the examiner in the earlier case, and believes that not only the nonmedical but the medical factors were not given adequate weight. * * *

"* * * For all the foregoing reasons, therefore, the examiner believes and finds that the claimant on July 28, 1952, had an impairment or impairments of sufficient severity to prevent him from engaging in any substantial gainful activity."

He then proceeds to hold that the claimant is "entitled to a determination establishing disability as of July 28, 1952." This is exactly contrary to the holding of the prior examiner which was affirmed by the Appeals Council and thereby became the final decision of the Secretary.

On November 27, 1961, the Appeals Council, on its own motion, decided to review this last decision (October 10, 1961) of the hearing examiner. The Appeals Council in a decision dated February 27, 1962, reversed the hearing examiner and held that the plaintiff was not entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary which is now before this court for review.

To fully understand what happened, it is necessary to set forth, chronologically, the proceedings to date: Plaintiff first filed an application to establish a period of disability on July 14, 1955. This application was denied initially and on reconsideration by the Bureau of Old-Age and Survivors Insurance after the West Virginia Vocational Rehabilitation Disability Determination Section, upon evaluation of the evidence by a physician and a counselor, had found plaintiff not under a disability. A hearing was held on plaintiff's request, and the hearing examiner (then referee) found plaintiff was not under a disability on or before March 31, 1954 (the date plaintiff last met the special earnings requirement of the statute as then in force, and the date as of which he was required to establish the existence of a disabling impairment), and also denied the claim. This denial was affirmed by the Appeals Council on December 8, 1958. No judicial review of this decision was sought, either within the statutory 60-day period or thereafter; and the findings and decision of the Appeals Council thus became final and binding on plaintiff.

On December 16, 1957, plaintiff also filed an application for disability insur-

ance benefits. This was also denied by the Bureau on the basis of the decision on the earlier application. No request for further proceedings on this claim was made by plaintiff, and this decision also became final and binding on him. Social Security Administration Regulations No. 4 section 404.908, 20 CFR 404.908.

On September 20, 1960, plaintiff filed a new application to establish a period of disability and for disability insurance benefits. In this, as in his first application, he claimed to have become disabled on July 28, 1952. This claim also was denied initially and upon reconsideration. The hearing examiner, however, allowed plaintiff's new claim, disagreeing with the earlier decision of the hearing examiner and the Appeals Council, and finding that plaintiff became disabled in 1952 as he alleged. The Appeals Council, then, on its own motion (as authorized by Social Security Administration Regulations No. 4 section 404.947, 20 CFR 404.-947) reviewed the hearing examiner's decision and reversed it, holding that plaintiff was not entitled to either a period of disability or to disability insurance benefits; and holding also that the decision of the Appeals Council on the first claim was res judicata and binding on plaintiff and that plaintiff was not disabled up to and including March 31, 1954. It is this last decision that is the subject of review herein.

■ The Act provides in section 205(h) that the decision of the Secretary shall become binding on all parties (unless that decision is reversed on review by the district court as provided in section 205(g) of the Act). Judicial review of the first decision of the Secretary in this case was not sought. Under Social Security Regulations No. 4, section 404.956, such decision can be revised only by the Appeals Council upon a showing of "good cause." Section 404.958 of the Regulations points out that good cause is deemed to exist only when (1) new and material evidence is furnished, or (2) there is an error as to such decision on the face of the evidence on which such decision is based. The record is clear that no new and material evidence was furnished that pertained to plaintiff's medical condition during the period covered by the first Appeals Council decision, i. e., on or before March 31, 1954, and that decision of the Appeals Council was not erroneous on the face of the evidence. Therefore, good cause has not been shown for reopening that decision. Consequently, the Appeals Council in its decision of February 27, 1962, held that res adjudicata was applicable to the previous Appeals Council decision and that such decision was binding through March 31, 1954. This court agrees that the doctrine of res adjudicata applies as to the period covered by the first Appeals Council decision, i. e., up to and including March 31, 1954, in that there have been presented no new facts which did not exist at the time of the prior judgment or decision. See Johnson v. Flemming, 10th Cir., 264 F.2d 322 (1959).

Because of a change in the statute, plaintiff last met the special insured status requirements through September 30, 1956. Therefore, to be eligible for a period of disability and for monthly insurance benefits under the Act, he had to be disabled on or before September 30, 1956, and after April 1, 1954 (the first day of the period not covered by the prior decision of the Appeals Council).

Plaintiff submitted no new medical evidence in support of the September 20, 1960, application. The only medical evidence of record is that relating to plaintiff's first application which failed to establish the existence of a disability as contemplated by the Act, on or before March 31, 1954. It is also clear that it fails to establish the onset of a disability after that date and on or before September 30, 1956.

A letter dated October 9, 1953, shows that the medical examiner of the Welfare and Retirement Fund of the United Mine Workers of America found plaintiff disabled, and benefits of $100 a month were awarded. The letter stated " * * * it is very probable that you may be able to overcome your disability * * *."

Doctor Don W. Hatton reported that he first saw plaintiff in June, 1953. He had a history of shortness of breath, smothering and wheezing. On examination, Doctor Hatton found mild pulmonary emphysema (mild loss of lung tissue elasticity), fibrosis, and bronchial asthma. He did not consider plaintiff totally disabled. Subsequently, on November 29, 1956, plaintiff was further examined by Doctor Hatton at Government expense. The report of examination, including X-rays and pulmonary function tests, revealed minimal fibrosis and emphysema; timed vital capacity was seventy per cent of normal. It was noted that the left thumb and forefinger, the right forefinger, and also the first joint of the right ringfinger had been amputated. (Plaintiff testified that the amputations on the left hand occurred in 1951, and on the right hand in 1925.) Doctor Hatton's conclusions were that plaintiff's vital capacity (the amount of air that a person can forcibly expire after full inspiration) was not greatly impaired. Rehabilitation was deemed advisable, though probably not feasible. The doctor pointed out that plaintiff's complaints at that time (after the last date that he met the special earnings requirement) were the same as his complaints when the doctor saw him in 1953.

Doctor S. G. Zando examined plaintiff for the Department of Public Assistance and submitted his report on April 25, 1955. Vision without correction was shown as 20/40; plaintiff did not wear glasses; and his corrected vision was not indicated. Blood pressure was 110/80. Amputation of the left index finger and thumb and one joint of the right index finger and one joint of the right ringfinger was indicated. Diagnoses were pulmonary fibrosis, bronchial asthma, borderline blood pressure "(Hypo)," and "Practically useless hands."

In a letter dated June 5, 1957 (almost nine months after plaintiff last met the special earnings requirement), Doctor James M. Whittico stated that he examined and treated plaintiff and found that he suffered "with a severe pain of chest and back with weakness, dizziness and loss of appetite." His diagnoses were pulmonitis (inflammation of the lungs), "disfunctioned" kidney, and general debility which, in the opinion of the doctor, made him disabled.

A careful review of the medical evidence shows the following impairments during the crucial period (April 1, 1954, to September 30, 1956): (1) loss of or loss of use of some fingers of both hands, (2) pulmonary fibrosis and emphysema, and (3) bronchial asthma. Other conditions, including kidney disfunction and general debility are not shown to have been present up to September 30, 1956. There are no objective medical findings of kidney disease nor were there symptoms related to such a disorder. Further, the consultative examination performed on November 29, 1956, showed, instead of general debility, that plaintiff was "well developed" and "well nourished."

The conclusion of Doctor Whittico that plaintiff was disabled is clearly not binding on the Appeals Council or this court. The opinions of doctors must be carefully weighed and evaluated in determining the ultimate issue of disability. A flat assertion by a doctor that the claimant was disabled or unable to perform any gainful activity is of little, if any, assistance in aiding the arbiter of the facts in arriving at his conclusion concerning the disability as contemplated by the Act, especially where such an assertion is not supported by objective findings. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617. Such is the case here.

Plaintiff was born in 1905, started to work in the mines in 1919, and continued to do so for thirty-two years. The last two years he worked as a brakeman and motorman. It should here be remembered that the injuries to his right hand occurred in 1925 and to his left hand in 1951. It is manifest that these injuries did not prevent him from engaging in substantial gainful activity in that he did not stop working until 1952. Undoubtedly, plaintiff's hands are an em-

ployment handicap, but clearly they are not such as to render him disabled within the meaning of the Act. His work record after these injuries is substantial evidence in support of that conclusion. Also there is substantial medical evidence of record to support the Secretary's conclusion that plaintiff was not so impaired that he could not pursue any substantial gainful activity at the time that he last met the special earnings requirements.

Therefore, since there is substantial evidence to support the Secretary's decision and since plaintiff has failed to meet the criteria set forth in Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962), for establishing the existence of a disabling impairment within the meaning of the Act, defendant's motion for summary judgment is granted.