**Mabel LAWRENCE, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Sec. HEW, Defendant.**

**No. 78–741C(A).**

United States District Court, E. D. Missouri, E. D.

April 10, 1979.

---

William Sitzer, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

HARPER, District Judge.

Plaintiff Mabel Lawrence commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the defendant Secretary of Health, Education, and Welfare denying disability benefits. The parties have filed cross-motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. In determining these motions the Court has considered the administrative record and the parties' memoranda of law.

On February 7, 1977 plaintiff's application for disability insurance benefits under Section 223 of the Act, 42 U.S.C. § 423, was filed. In that application she alleged she became disabled during 1973 on account of phlebitis, an arthritic spine, emphysema, a broken hip, and a blinking left eye. The application was denied after initial consideration and after reconsideration. On February 1, 1978 an evidentiary hearing was held before an administrative law judge. During this hearing plaintiff was represented by counsel and testified in her own behalf. On April 25, 1978 the administrative law judge denied the application for benefits; the Appeals Council affirmed this denial. The decision of the administrative law judge became the final decision of the defendant Secretary.

Judicial review of a final decision denying disability insurance benefits is limited to a determination of whether the decision is supported by substantial evidence and whether it follows the appropriate rules of law. 42 U.S.C. § 405(g); *Easttam v. Secretary of Health, Education, and Welfare*, 364 F.2d 509 (8th Cir. 1966).

In his decision the administrative law judge made the following specific findings of fact:

1. The claimant last met the special earnings requirement on September 30, 1975.
2. As of September 30, 1975, the last day claimant met the special earnings requirement, the claimant had the following medically determinable physical and/or mental impairments: thrombophlebitis by history, and early emphysema.
3. The claimant is 49 years old and completed the eleventh grade in school.
4. Most of the claimant's work experience has been as a waitress. Claimant has also worked as a sewing machine operator.

5. Claimant's residual capacities permitted her to engage in her usual occupation as a waitress. She also had skills that were readily transferable to work such as sorter, cutter, binder, and inspector in the hat industry.
6. The evidence fails to establish that claimant's impairments have been of sufficient severity as to prevent her from engaging in substantial gainful activity for a period which has lasted, or can be expected to last, for at least twelve continuous months.
7. The claimant was (sic) not been under a disability[1] within the meaning of the Social Security Act at any time prior to September 30, 1975, when she last met the special earnings requirement.

(Tr. 14–15).

Plaintiff contends that the administrative record does not support the findings of the administrative law judge. Rather, she contends that the record establishes her disability and her entitlement to benefits.

Plaintiff was born on July 1, 1928. She is a small woman, weighing approximately 102 pounds. Her formal education extended to the eleventh grade. During 1961 and 1962 she was employed as a sewing machine operator and worked for a hat production company. From 1964 to May 1971 she was employed as a restaurant waitress.

The record indicates that from November 16, 1972 through May 15, 1974 plaintiff was under the care of Dr. Robert Poetz, D.O. He treated her for dysfunctional uterine bleeding. In November 1972 she underwent a total hysterectomy. Thereafter, he treated her for menopausal syndrome and early emphysema. (Tr. 115).

From August 1, 1974 to March 13, 1978 plaintiff was seen frequently for medical evaluation at the Medical Center of Florissant, Missouri. Throughout this time she was treated by Dr. Jack Cokrhame, M.D., an internist. Thrombophlebitis and pulmonary emphysema were diagnosed and plaintiff was placed on anti-coagulants. Plaintiff complained of dizziness and blurred vision sporadically up to January 30, 1975 when it was noted that she no longer had blurred vision. (Tr. 108, 132).

From October 19 to 31, 1974 plaintiff was hospitalized at Christian Hospital Northwest for phlebitis of the left leg. She complained of left leg pain and swelling frequently up to July 21, 1975. Her leg condition improved during September 1975 although she occasionally suffered some pain and bruising. She was asymptomatic on October 27, 1975. She again complained of pain in December, 1975; and in January and February, 1976. On March 9, 1976 she was described as doing well; she was suffering a tender left calf but no swelling. On October 21, 1977 there was no evidence of phlebitis. (Tr. 120–26).

Plaintiff was hospitalized in February 1976 with depression and epigastric pain. She was discharged with a diagnosis of irritable colon syndrome. X-rays of her lumbar spine indicated that it was normal. (Tr. 80–94).

---

1. Within the meaning of the Social Security Act "disability" means

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). A person is under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). An impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff was hospitalized from December 27, 1976 to January 9, 1977 on account of a fractured nose and a fractured left leg suffered in an altercation with her husband. Dr. C. B. Powell, M.D., on March 7, 1977 reported that plaintiff was treated for leg injury with metal pins. She now ambulates with a walker. Because of the walker plaintiff would not be able to perform any work. He estimated that she might be able to put her full weight on her leg during the summer of 1977. (Tr. 95).

On March 22, 1977 Dr. Cokrhame noted that plaintiff was suffering from pulmonary emphysema with dyspnea (breathing difficulty) upon exertion. He stated further:

> She is presently being seen by Dr. Charles Powell at the Medical Center of Florissant for a left femoral neck fracture which apparently is not healing and I would suggest that further information be obtained from him, referable to this. At this time, the patient is unable to work at any gainful occupation and the duration of disability, of course, is undetermined at this time, but probably is indefinite.

(Tr. 96).

On April 1, 1977 Dr. Marvin Rosecan, M.D., an internist, examined plaintiff. In his report of April 11, 1977 he recounted her social and medical history. He stated that plaintiff is unable to walk without a walker and suffers low back pain with sciatic radiation. He summarized her examination as follows:

> Mabel Lawrence has post-operative state multiple pinning of a sub-capital fracture of the left hip which according to the report of her orthopedic surgeon has non-union at present and is not expected to permit weight bearing until next summer. She has had post-phlebitis syndrome of the left leg with only minimal findings and these are clouded by the fracture of the left lower extremity with some weakness and decrease in strength in the muscles of the left lower extremity. She has had pulmonary embolism. She has been on anti-coagulant therapy.

She has bronchitis and complains of shortness of breath. There was no wheezing described or heard at the time of this examination. She has a marked degree of obstructive pulmonary disease. Her blood pressure is normal and the electrocardiogram is not remarkable. There is no evidence of frank congestive heart failure or angina pectoris. She would have Class I functional capacity of the American Heart Association classification. She is said to have rheumatoid arthritis. The sed rate is normal. There is no active joint or soft tissue swelling in any of the peripheral joints not affected by the fracture. However, she does have lumbar strain. There is no definite evidence of an acute herniated nucleus pulposus. There are anxiety and some depressive symptoms related to her illness and previous status.

(Tr. 99–100).

On November 25, 1977 Dr. Cokrhame stated that plaintiff has been disabled and unable to work since July of 1974. (Tr. 108). On February 28, 1978 he reported that she continues to be disabled. (Tr. 116).

On January 5, 1978 Dr. Poetz stated that plaintiff is unable to walk without a walker. Although his report is not supported by current medical data, he stated that she was currently suffering from chronic obstructive pulmonary disease, degenerative joint disease, and anorexia (diminished appetite for food). It was his opinion that plaintiff "is unable to be gainfully employed and has been so since her surgery in 1972." (Tr. 115).

Plaintiff testified during the hearing before the administrative law judge that she is currently under a doctor's care. She testified that in July 1974 when she was hospitalized she was unable to walk on her left leg. This condition lasted approximately six to eight months. In October 1974 she was hospitalized for phlebitis of the left leg. At that time she was unable to walk, much less work.

At the hearing Arthur E. Smith, Ph.D., a vocational expert, testified. He was then familiar with plaintiff's claim file and had

heard her testify. He described her previous work as a drive-in waitress as light work requiring walking and standing, but not lifting more than twenty pounds. The administrative law judge questioned him as to her employability through 1975. He was asked to assume plaintiff's age and the existence of her subjective medical complaints. It was Dr. Smith's opinion that plaintiff had not been able to engage in any type of work.

The administrative law judge asked a second hypothetical question, requiring Dr. Smith to assume plaintiff's age, work history, and further as follows:

> In March of 1974 she suffered chest pain, and was hospitalized, and found to have weakness and the swelling in her left lower extremities. Well, she was dismissed. And for a period of time, she was under convalescing in bed. However, she was up and about. In October of 1974, she was again hospitalized. With complaints of pain in her left leg, and there was swelling. She was bedfast, for a period of three or four weeks, after release from the hospital. However, thereafter she was able to get up and about, do most of her normal duties; ironing, cooking, and so forth for herself, her husband and her children. Maintaining a rather normal life, although sometimes occasionally, which she was relieved of in 1976, she no longer . . . medication, according to the record.
>
> In 1976, due to an altercation with her husband, she sustained an injury to her hip. Otherwise, I do not wish to consider that in any subsequent or any particular complaints that she may have subsequent to September 30, 1975.

(Tr. 39–40). The vocational expert answered that, assuming plaintiff's pain was not of such severity to preclude walking and standing, she had been able to work as a waitress. This opinion was founded upon the assumption that plaintiff had returned to a normal life and had been able to cook and take care of her family as hypothesized by the administrative law judge. (Tr. 41 · 2). Furthermore, Dr. Smith testified that there were large numbers of light and sedentary jobs within the hat industry that plaintiff could perform.

Counsel for plaintiff questioned the vocational expert and directed him to assume that plaintiff was not able to do any walking, that any walking would cause swelling and great pain and discomfort in her legs. Counsel asked him whether or not plaintiff could be employed as a drive-in restaurant waitress. Dr. Smith answered in the negative. (Tr. 45–6).

■ Plaintiff first contends that the opinions of Drs. Cokrhame and Poetz that she is disabled, together with Dr. Rosecan's confirmation of her physical condition, establish the fact of her disability. In determining disability the administrative law judge must consider the medical data of record and is not bound by physicians' opinions on the ultimate issue of disability. *Russell v. Secretary of Health, Education and Welfare*, 402 F.Supp. 613, 619 (E.D. Mo.), *aff'd* 540 F.2d 353 (8th Cir. 1976).

■ Plaintiff argues that her subjective complaints must also be taken into account by the administrative law judge. In his opinion the administrative law judge stated that he did not find credible the severity of her complaints as to her condition prior to her leg and nose fractures in December of 1976. He stated that, although she experienced some pain and discomfort, the evidence was not persuasive that her pain and condition was disabling. The Court notes that the November 25, 1977 report of Dr. Cokrhame and the medical records of the Medical Center of Florissant, Missouri indicate that plaintiff suffered substantial pain in her left leg from July 14, 1974 intermittently through February 1976. The Court is of the opinion that during this period of time plaintiff was disabled within the meaning of the Social Security Act by reason of her thrombophlebitis condition. The hypothetical question posed to the vocational expert by the administrative law judge is not supported by the record in its assumption that during this period of time plaintiff was able to conduct her regular household chores. Even if

plaintiff were able to do so, such activity does not indicate an ability to engage in substantial gainful activity on a sustained basis. *Goodwin v. Richardson*, 357 F.Supp. 540, 546 (E.D.Mo.1973).

The Court has carefully studied the administrative record of this case. The record does not show that plaintiff was disabled by any impairment, or combination of impairments, other than her left leg phlebitis condition, on or before September 30, 1975. Since that time her health has unfortunately deteriorated, in large part due to her December 1976 leg injury. This was, however, after her special earnings requirement period ended.

The Court will sustain plaintiff's motion for summary judgment and deny defendant's motion for summary judgment, only to the extent that it has determined that the record establishes that plaintiff was disabled from July 1974 through February 1976. Benefits will be ordered paid upon this period of disability, subject to the twelve month application limitation of 42 U.S.C. § 423(b).