**Dorothy POPE, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

No. C–3–79–333.

United States District Court,
S. D. Ohio, W. D.

Feb. 13, 1981.

---

Steven B. Horenstein, Dayton, Ohio, for plaintiff.

Joseph E. Kane, II, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY ADOPTING RE-
PORT OF MAGISTRATE IN ITS EN-
TIRETY; PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OVER-
RULED; DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT SUS-
TAINED; JUDGMENT TO DEFEND-
ANT; ENTRY OF JUDGMENT;
TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

The captioned cause is before the Court upon Plaintiff's motion, pursuant to 28 U.S.C. § 636(b)(1)(C), seeking a review of the Magistrate's recommendation that Defendant's motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied. Plaintiff has submitted a memorandum in support of her motion, maintaining that the Magistrate improperly rejected the psychological evidence of Plaintiff's treating physician, Dr. Veveris. An analysis of all matters submitted to the Court indicates the following issues to be of significance:

1. Whether the Secretary and Magistrate erroneously disregarded the medical opinion of Dr. Veveris, Plaintiff's treating physician;

2. Whether the Court may properly consider the presence or absence of objective medical evidence supporting a physician's conclusion of disability, and;

3. In the determination of disability, what weight should be afforded to a treating physician's opinion.

## II. STANDARD OF REVIEW

The threshold considerations to be here addressed involve the appropriate power of this Court, under 28 U.S.C. § 636(b), to review the recommendations of the Magistrate, and, pursuant to 42 U.S.C. § 405(g), to evaluate the administrative decisions of the Secretary and the Administrative Law Judge (hereinafter referred to as ALJ).

28 U.S.C. § 636(b) provides for various types of references by a judge to a Magistrate. § 636(b)(1)(A) indicates that a magistrate may determine any pre-trial matter, with certain listed exceptions, and that reconsideration by the judge of such matters is limited to cases where the Magistrate's order is shown to be clearly erroneous. § 636(b)(1)(B) specifies that, in other matters, including those motions excepted in § 636(b)(1)(A), the Magistrate may submit to the judge proposed findings of fact and recommendations for disposition. With regard to this latter category of references, § 636(b)(1)(C) authorizes the Court, upon objection by a party, to conduct a de novo determination of those portions of the report to which objection is made. Subsection C further allows the Court to accept, reject, or modify, in whole or in part, the findings of the Magistrate. Finally, in § 636(b)(2), the Court is empowered to appoint a magistrate, with the consent of the parties, to serve as a special master in any civil case.

As the present case involves a motion for summary judgment, which is specifically excepted in § 636(b)(1)(A), the reference herein is governed by § 636(b)(1)(B). As indicated above, the Court is required to conduct a de novo review of those portions of the Magistrate's report to which objection has been made. And, in addition, the Court here may accept, reject, or modify, in whole or in part, the recommendations or findings made by the Magistrate.

In *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the Supreme Court of the United States considered whether former 28 U.S.C. § 636(b), Federal Magistrates Act, Pub.L.No.90–578, § 636, authorized the reference to a Magis-

trate of Social Security benefit cases. That statute, in Subsection (a), listed specific duties to be performed by Magistrates. Subsection (b) then stated that additional duties could be assigned to the Magistrate, if those functions were not inconsistent with the Constitution and laws of the United States. Following this statement, the statute provided examples of additional duties, which were expressly indicated to be non-exclusive.

In *Mathews, supra,* the Court ruled that referral of Social Security benefit cases was an additional duty contemplated by the statute. Further, the Court considered whether the Magistrate's recommendations in such cases should be reviewed by the district judge according to the clearly erroneous standard established by Fed.R. of Civ. Proc. 53(e). Although § 636(b) was silent on this point, by analyzing the structure of § 636(b), the Court determined that the statute distinguished between types of references. Because of this, the Court concluded that the clearly erroneous standard did not need to be applied to every type of reference, and in particular, should not be required in Social Security references. In this context, the Court first noted that the Magistrate's function was limited to "a preliminary review of a closed administrative record." *Id.* at 270, 96 S.Ct. at 554.

The Court further analyzed the Magistrate's function in such cases as follows:

The Magistrate's limited role in this type of case nonetheless substantially assists the district judge in the performance of his judicial function, and benefits both him and the parties. A Magistrate's review helps focus the court's attention on the relevant portions of what may be a voluminous record, from a point of view as neutral as that of an Article III judge. Review also helps the court move directly to those legal arguments made by the parties that find some support in the record. Finally, the Magistrate's report puts before the district judge a preliminary evaluation of the cumulative effect of the evidence in the record, to which the parties may address argument, and this way narrows the dispute.

*Id.* at 271, 96 S.Ct. at 554. While the Court did approve this advisory function of the Magistrate, emphasis was also placed upon the fact that the recommendation of the Magistrate could be wholly ignored by the judge, if he was not satisfied with the report. In fact, the Court stated that "the authority and the responsibility—to make an informed, final determination, we emphasize, remains with the judge." *Id.* at 271, 96 S.Ct. 554.

Although § 636(b) was amended in 1976, the Supreme Court in *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (June 23, 1980), did not view that amendment as having altered a district judge's ability to review decisions of the magistrate. The Court noted that the purpose of the amendment was to further "define the additional duties which may be assigned to a United States Magistrate." *Id.* at 2408. Also, the Court considered the meaning of "de novo determination" as used in § 636(b)(1)(C). Initially, Justice Burger emphasized that under the statute as amended, the magistrate was permitted to hear certain "dispositive" motions specified in § 636(b)(1)(A), and to make recommendations with regard to those motions. From this report, parties were entitled to appeal, and the district judge could then conduct a de novo determination of any matter to which objection had been made. This system, the Court concluded, satisfied Article III concerns and congressional intent by vesting "ultimate adjudicatory power over dispositive motions" in the district court while granting the "widest discretion" on how to treat the recommendations of the magistrate." *Id.* at 2408 (citing S.Rep.No. 94–625, p. 10). Finally, the Court noted that:

[I]n providing for a "de novo determination" rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chose to place upon a magistrate's proposed findings and recommendations.

*Id.* at 2409.

The foregoing analysis indicates that, rather than undermining *Mathew, supra,*

the amendments to § 636(b) and the *Raddatz* decision have served to further heighten a district court's ability and obligation to review the recommendations of the Magistrate, particularly where dispositive motions are involved. Consequently, the Court intends to be cognizant of this responsibility and will accordingly conduct a de novo determination of all matters in the Magistrate's Report to which objections have been made.

Because of the peculiar nature of Social Security benefit cases, and the restricted ability of this Court to review administrative findings, de novo determination must herein necessarily take a subtly different and more narrow meaning than that normally accorded to the phrase. However, the Supreme Court has already indicated in *Raddatz, supra,* that even where testimony of witnesses is involved, "de novo" as used in § 636(b) does not require that the Court conduct a new hearing. Consequently, a restrictive approach to "de novo determinations" seems generally to be in order.

42 U.S.C. § 405(g) provides that "the findings of the Secretary, as to any fact, shall be conclusive if supported by substantial evidence." Courts have interpreted this provision as permitting the District Court a limited scope of review to determine only whether the administrative findings and decision are supported by substantial evidence. *Wokojance v. Weinberger,* 513 F.2d 210 (6th Cir. 1975); *May v. Gardner,* 362 F.2d 616 (6th Cir. 1966) Further, this Circuit has followed other jurisdictions in holding that courts are not to resolve conflicts in the evidence or determine the credibility of witnesses. *Myers v. Richardson,,* 471 F.2d 1265 (6th Cir. 1972)

Substantial evidence was defined by the Supreme Court in *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), as follows:

"Substantial evidence," in turn, has been defined for purposes of the Act as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 401, 91 S.Ct. at 1427.

Based on the preceding analysis of review under §§ 636(b) and 405(g), the following principles may be articulated, bearing in mind the Magistrate's essentially advisory function, as discussed in *Mathew, supra*:

1. In reviewing administrative Social Security decisions, the Court is limited to a determination of whether or not the decisions are supported by substantial evidence in the record; 405(g); *Wokojance, supra*;

2. The Court may properly refer Social Security benefit cases to the Magistrate, by virtue of § 636(b) and the ruling in *Mathew, supra*;

3. Such a reference is one of a dispositive motion under § 636(b)(1)(A). *Mathew, supra; Raddatz, supra*;

4. The Magistrate is also restricted in his findings and recommendations, to a consideration of whether the Secretary's decision is supported by substantial evidence; § 405(g); *Wokojance, supra*;

5. The function of the Magistrate's Report is advisory, with the goal of focusing the Court's attention upon relevant portions of the record, and with the aim of narrowing the issues before the Court. *Mathew, supra*;

6. Because of this advisory function, the Court may, in its sound discretion, place whatever weight is merited upon the Magistrate's recommendations. *Mathew, supra; Raddatz, supra*;

7. Ultimate responsibility for any decision rests with the judge, and satisfaction of Article III requires that the judge conduct a de novo determination of all matters to which objections have been made, in order to determine whether the administrative decisions are supported by substantial evidence in the record. *Mathew, supra; Raddatz, supra.*

With these standards in mind, the Court approaches the task at hand, bearing in mind that the issue herein has been narrowed, as contemplated by *Mathew, supra,*

to a consideration of the effect to be given to Dr. Veveris' conclusion that Plaintiff was under a disability.

## III. RELEVANT PROCEDURAL HISTORY

On February 8, 1979, a hearing on Plaintiff's disability claim was held before an ALJ, and on April 26, 1979, a decision was rendered denying disability insurance benefits and supplemental security income. (T. 10–16) That decision was specifically premised upon a finding that, although the claimant's impairments had prevented her from engaging in substantial gainful activity, since December, 1978, her impairment would not be expected to last twelve months. (T. 15) This determination was apparently founded on the supplemental questionnaire submitted by Plaintiff's treating physician, Dr. Veveris, which form indicated that Plaintiff would be "unemployable at least for the next six months." (T. 95)

After receipt of this decision, Plaintiff filed a request for review with the Appeals Council (T. 8), and submitted new medical evidence in the form of another supplemental questionnaire signed by Dr. Veveris. (T. 108; 109–111) On August 17, 1979, the Appeals Council denied Plaintiff's request for review, finding that Dr. Veveris' later determination of disability was not binding on the Secretary in light of the entire record. (T. 4) From that decision, Plaintiff appealed to this Court, and the matter was referred to the U.S. Magistrate. On October 15, 1980, the Magistrate entered his recommendation that summary judgment be granted against Plaintiff. In that decision, the Magistrate declined to accept as conclusive the findings of Dr. Veveris because her opinions were unsubstantiated, were unsupported by the record as a whole, and were not derived from medically acceptable diagnostic techniques as required by 42 U.S.C. § 423. (Magistrate's Report, pp. 4, 5) Plaintiff has accordingly moved the Court to review the Magistrate's Report, claiming that the evidence of Dr. Veveris was improperly disregarded by the Magistrate and by the Secretary.

## IV. DISCUSSION OF LAW AND FACTS

In order to qualify for benefits in the present case, Plaintiff must establish that she is disabled under 42 U.S.C. § 423(d)(1) or 1382c(a)(3)(A). Both of these sections define disability as an inability:

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . .

42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C) further defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■ Plaintiff has contended that the Magistrate's rejection of Dr. Veveris' medical conclusions as "unsupported" and "not derived from medically acceptable diagnostic techniques" was an erroneous and narrow construction of the law. Plaintiff is correct in her assertion that an applicant is not required to "establish his disability by objective medical evidence." *Whitt v. Gardner*, 389 F.2d 906, 909 (6th Cir. 1968) Later cases in this Circuit, however, appear to retreat somewhat from the ruling in the *Whitt* case. For example, in *Walters v. Gardner*, 397 F.2d 89 (6th Cir. 1968), the Court found, on similar facts to those in *Whitt, supra*, and despite a specific reference by the examiner to the lack of objective evidence, that:

Considering the examiner's opinion [denying disability benefits] as a whole, we are not persuaded that his conclusion was bottomed upon the absence of *objective* medical findings. *Id.* at 91. (Emphasis in original)

*See also: Mullins v. Cohen*, 408 F.2d 39 (6th Cir. 1969); *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)

■ The above analysis indicates that the Secretary's determination of non-dis-

ability will be upheld where it is not specifically premised upon the non-existence of objective medical evidence. In other words, subjective medical evidence, absent objective medical findings, may, in a given case, warrant a finding of disability. Further, in light of the cited authority, the conclusion may also be made that the existence of objective medical evidence may properly be considered in a disability determination, as long as the lack of such evidence is not a *controlling factor* in the decision.

■ A careful scrutiny of the entire record herein indicates that any disregard of Dr. Veveris' opinion was not simply due to the absence of objective medical evidence underlying that opinion. In fact, the ALJ accepted the conclusions of Dr. Veveris but found that a disability of six months did not fulfill the statutory requirement. (T. 16) The Magistrate did apparently note the lack of objective evidence, but, as previously indicated, such lack may be a proper consideration where it is not used as the primary or controlling factor in the decision. Further, research has indicated that a physician's determination of disability is not binding on the Secretary or the Court. *Tiller v. Celebrezze,* 211 F.Supp. 792 (S.D.W.Va.1962) *See also: Lawrence v. Califano,* 470 F.Supp. 98 (E.D.Mo.1979); (20 C.F.R. § 404.1626) In addition, Courts have held that a physician's conclusory statement in regard to a claimant's disability may be disregarded as insubstantial where it is "not supported by any medically acceptable clinical or laboratory diagnostic data or findings." *Cunningham v. Wingo,* 443 F.2d 192, 194, 195 (7th Cir. 1971) *In accord, Flowers v. Harris,* 616 F.2d 776 (5th Cir. 1980)

Cases in the Sixth Circuit have indicated that the weight to be given a doctor's opinion will depend on the extent to which it is supported by "specific and complete clinical findings." *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1973) The Court finds little distinction between this standard and that articulated in *Cunningham, supra,* particularly in light of the following statement of the Sixth Circuit Court of Appeals in *Halsey, supra,* that:

We, however, do not read Judge McAllister's language in these cases as establishing a mechanical rule insulating a treating doctor's opinion from attack...

We have observed above that Halsey's treating doctor provided *but meager support for his unwavering view that Halsey was permanently and totally disabled. Halsey, supra,* at 1236 (Emphasis added)

Applying the above standards to the present case, the Court concludes that the medical opinion of Dr. Veveris is unsupported either by specific clinical findings or by the record as a whole. Although the Court recognizes the difficulty of providing clinical findings where a mental impairment is involved, *Polly v. Gardner,* 364 F.2d 969 (6th Cir. 1966), the findings of Dr. Veveris are not only unsubstantiated but they are themselves contradictory. In this regard, *see: Kirkland v. Weinberger,* 480 F.2d 46 (6th Cir. 1973), *cert. denied* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973). (Doctor's conclusion of disability which was contradicted by same doctor's hospital admission history did not constitute substantial evidence of disability)

For example, in the first supplemental questionnaire completed by Dr. Veveris on January 19, 1979 (T. 93–95), she indicated that the claimant would be unemployable at least for six months. (T. 95) At that time, Dr. Veveris rated Plaintiff as having a moderate impairment of her ability to relate to others, and indicated that she possessed a poor ability to perform routine, repetitive activities or to tolerate work pressures. After the decision of the ALJ was rendered, an additional questionnaire was completed by Dr. Veveris on July 20, 1979. (T. 109–111). In that report, despite a substantial improvement in almost all categories, Dr. Veveris increased Plaintiff's anticipated period of disability from six to eighteen months. Specifically, Dr. Veveris found that Plaintiff had no deterioration in her personal habits, as opposed to a prior rating of mild deterioration (T. 109), and further indicated that Plaintiff had a good ability to perform routine, repetitive activities (T. 109), a fair ability to tolerate work

pressures (T. 109), and a good ability to carry out instructions given by supervisory personnel (T. 110)

Because of the above evidence, the Court is compelled to conclude that Dr. Veveris' determination of disability is based upon contradictory findings and need not be accepted as binding. In addition, Dr. Veveris' conclusion of disability is unsupported by the record as a whole. The testimony of Plaintiff indicated that, at the time of the hearing, she was enrolled in college, taking four courses for a total of twelve credit hours. (T. 27, 28) During the previous quarter, she had also taken twelve credits (T. 30) Plaintiff testified further that during the present quarter she attended classes every morning during the week (T. 43, 44), and had attended more classes than she had missed. (T. 45)

Although Plaintiff was admitted to St. Elizabeth Medical Center in Dayton on December 8, 1978, for treatment of depression, she was rated as "improved" upon discharge, and Dr. Veveris noted at that time the Plaintiff "felt she would be able to cope again with the stresses of daily living." (T. 98) As previously indicated, Dr. Veveris stated, shortly after Plaintiff's discharge on December 30, 1978, that she would only be disabled for approximately six months. Again, Dr. Veveris' later report of July 20, 1979, is not considered to be binding on the Court for the reasons cited above.

Accordingly, after a careful scrutiny of the entire administrative transcript, the Court finds that Plaintiff failed to meet the burden of establishing that she is unable to engage in substantial gainful employment. In addition, the Court finds that the decision of the Secretary was supported by substantial evidence in the record as a whole. Further, the Court finds that, as the medical evidence received from Dr. Veveris was conclusory and contradictory, the Magistrate did not err in choosing to disregard such evidence.

## V. CONCLUSION

Based on the above analysis of the facts and legal principles applicable to the case, the Court finds that the objections of the Plaintiff to the Report of the Magistrate are not well taken. The Court further finds that the Report and Recommended Decision of the Magistrate should be adopted in its entirety, and it is so ORDERED.

Wherefore, based on the aforesaid, this Court overrules the Plaintiff's motion for summary judgment and sustains and grants that of the Defendant, thus granting final judgment in favor of the Defendant and against the Plaintiff herein.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.